IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HMC, INC. | : | CIVIL ACTION |
| v. | : | |
| GARVIN MITCHELL CORP., et al. | : | NO. 07-CV-3165 |

Ditter, J.                                                                                                    March 26, 2008

## MEMORANDUM AND ORDER

This case comes before me as a motion for reconsideration of an order in which I dismissed plaintiff's amended complaint for declaratory judgment and breach of contract. Plaintiff contends that I cannot refuse jurisdiction over its claim for money damages and that since both claims share common issues, I should reinstate its claim for declaratory relief. I agree that it was error to dismiss the complaint in so far as it seeks money damages but will affirm my ruling as to declaratory relief.

## FACTS

Although there are numerous parties referred to in this dispute, for present purposes only two need be considered: plaintiff HMC, "authorized" to act for Hurd Millwork Company, Inc., and defendant Bentley, a collection of interrelated corporations and enterprises including Garvin Mitchell Corp.

According to the amended complaint, in the late 1990s Hurd sold windows and related materials to Advanced Window Supply Co. which in turn sold them to Bentley for use in five developments where Bentley built and sold houses. Bentley claimed that many of the windows

-1-

were defective and refused to pay for them.  Hurd brought suit in federal court to recover for amounts which Bentley refused to pay, and Bentley brought suit in state court to recover its damages for the defective products which Hurd had supplied.  Although Hurd contended the problems with its components came from improper installation and construction practices, all litigation was settled when Hurd agreed to pay Bentley $82,000 and forgive outstanding invoices of more than $160,000.

As part of the parties' settlement, they executed an agreement on October 1, 2002, that included comprehensive but limited mutual releases for specific properties and defects covered by the agreement.[1]  Exhibit A, to which the release refers, identifies 78 Bentley-built houses, their alleged defects, a definition of the particular defect, and the location of the defect as to each

---

[1] The agreement includes the following paragraphs setting forth the releases:

    4.  Hurd and Advanced hereby remise, release and forever discharge the Bentley Parties and their respective officers, directors, shareholders, employees, agents, successors and assigns from all, and all manner of, claims, counterclaims, demands, defenses, actions, causes of action, suits, debts, obligations or liabilities of any kind which Hurd and/or Advanced asserted or could have asserted in the Federal Action.

    5.  The Bentley Parties hereby remise, release and forever discharge Hurd and Advanced and their respective officers, directors, shareholders, employees, agents, successors, and assigns from any and all manner of, claims, counterclaims, demands, defenses, actions, causes of action, suits, debts, obligations, or liabilities of any kind which Bentley Parties asserted or could have asserted relating to specific alleged defects to the specific windows identified with an "X" in Exhibit "A" which is incorporated and made a part of this agreement.

    6.  The releases in Sections 4 and 5 are limited releases.  Nothing contained therein shall be deemed or construed in any way to waive, release, limit or affect in any way any claim or potential claim not specifically released that the Parties may have against each other or any other party (whether directly or by subrogation) including, without limitation, (i) claims asserted or that may be asserted regarding any alleged defects in any location not specifically identified in Exhibit "A", and (ii) claims asserted or that may be asserted under any warranties associated with any goods manufactured and/or purchased from Hurd and/or Advanced (the "Warranties").  Any claims not specifically released herein relating to any Warranties are preserved.

*Am. Comp. ¶ 37, Exh. E.*

house.  For example, at the Harrison Estate development, the street address for Lot No. 15 is 17 Harrison Drive.  The alleged defects refer to peeling paint repairs, leaking window repairs, and door-leak repairs.  The leaking window locations are "Bathroom - 2nd Floor, Attic, Family Room, Sunroom, Master Bath" and the door locations are "Foyer, Sunroom."

Various property owners now have brought suit in state court for damages resulting from defects in Bentley-built houses and Bentley has pointed its litigation finger at Hurd by way of cross claim, joinder, and threat.  In Count One of the instant matter, HMC seeks a declaration that any claims by Bentley for reimbursement from Hurd arising from the homeowner's suits are barred if the alleged defects are identified in the parties' release, that neither Hurd nor Advanced has any duty to provide insurance coverage to Bentley, and that Bentley has waived any defenses it might assert to cross-claims by Hurd against Bentley with respect to the specifically identified homes and defects.

In Count Two, HMC seeks money damages resulting from Bentley's alleged breach of the release agreement.

The amended complaint specifies that in state court there are four home-owners' actions brought against both Bentley and Hurd in which each has filed a cross-claim against the other: *Burns, Dolan, Holloway,* and *Ashton*; one action where Bentley's complaint joining Hurd as an additional defendant was dismissed, *Dockray*; and one action where Bentley has filed a writ of summons to join Hurd as an additional defendant, *Latran.*  As to each of these actions, HMC claims that Bentley breached its contract of release as a result of which HMC has incurred fees and costs in raising defenses.

In addition, the amended complaint alleges that there are eleven instances where a writ of

summons has been filed by home-owners against Bentley in state court and that Bentley has represented it will file a cross-claim against Hurd or join Hurd "where possible."

The amended complaint also names five homeowners who have sued Bentley for "defects in the construction of their homes and resulting damages." *Id.* ¶ 43.  Of these five, two, *Burns* and *Dolan,* are among those where Hurd has also been sued directly.  Two of the five, *Slocum* and *Simon,* refer to houses included in the mutual release and are also listed a second time in the amended complaint as "Additional Homeowner Claimants."[2]  *Id.* ¶ 87(h),(i).  The last of these five, *Marano*, is not otherwise referred to in the amended complaint or in the release.[3]  There is no allegation that HMC is defending or is suffering any damages as to *Slocum, Simon,* or *Marano.*[4]

Taking another tack, the amended complaint alleges that in state court Bentley made "representations"[5] that Hurd was vicariously liable for Advanced's agreement to insure Bentley, that Bentley made that insurance claim in the *Burns* case,[6] in a separate state court action Bentley has issued a writ of summons that Hurd moved to quash, and Bentley has sued Hurd's insurance carrier, all of which have caused HMC to incur legal fees and costs of an unstated amount.  The

---

[2] It is unclear why these properties are listed twice.

[3] In the amended complaint, HMC has deleted references to state actions being pursued by four other homeowners whose properties were not covered by the settlement agreement.  It is unclear why this homeowner's claim remains.

[4] In the *Burns* action, plaintiff alleges its attorneys' fees and costs in defending just against Bentley's cross-claim exceed $75,000 and the meter is still running – that's $75,00 to defend the cross-claim, not to defend against the homeowners' suit or to assert the cross-claim against HMC.  However, as to the other three state actions where Hurd is an original defendant, the amount of HMC's expenses, incurred or to be incurred, is not specified.  The only case where HMC's damages could presently be ascertained is *Dockray*.

[5] Where, when, or how we are not told.

[6] Again, the *Burns* case is one where Hurd was sued directly by the homeowners.

significance of Bentley's insurance representations and claims is not specified, how Bentley contends it was damaged by what Advanced did or failed to do is not stated, and what happened to HMC's motion to quash Bentley's writ of summons remains among the great unknown.[7] Some explanation might be expected from the exhibits attached to HMC's complaint but they only add doubt to uncertainty.

Exhibit A contains "Supply Agreements" for two Bentley developments in both of which Advanced agrees to supply proof it has obtained workmen's compensation insurance that also names Bentley as an additional insured. These same documents are again provided as part of the complaint's Exhibit D in addition to which there is another Advanced contract with Bentley that requires Advanced to provide liability insurance, auto liability insurance, and workmen's compensation insurance. Neither in the amended complaint nor in its exhibits is there any further explanation of Bentley's insurance assertions and what they have to do with this case that deals with allegedly defective products, limited mutual releases, and cross-claims.[8]

Finally, the amended complaint asserts that Bentley has alleged in "several" motions in state court that Hurd Windows and Doors is a successor of interest to Hurd, "resulting in

---

[7] At least unknown so far as the amended complaint is concerned.

[8] Exhibit I to the amended complaint is a a copy of a writ of summons issued for the taking of a deposition and the production of documents in aid of drafting a complaint. Whether the documents were produced, deposition taken, or the complaint drafted is not mentioned. This exhibit also asserts that "the supply agreement *requires* [Advanced] to provide insurance coverage" and that "neither [Advanced] nor HMC obtained the *requested* coverage." *Am. Comp. Exh. I* at ¶¶ C and Q. The only insurance provision in the Supply Agreements attached to this complaint would require worker's compensation coverage. Exhibit D includes a subcontractor's agreement for Jordan Estate that refers to liability insurance coverage but it is clear that this coverage would not be applicable to a products liability claim. Although Jordan Estate is one of the developments with properties included in the settlement agreement, no property named in the amended complaint is located in Jordan Estate.

increased costs of Hurd's defense of the various cases significantly."[9] Although the amended complaint leaves hanging the implication that there is no connection between Hurd Millwork Company and Hurd Windows & Doors, it does not say so. Assuming there is no connection, why Hurd would spend money in defending an unrelated company is not explained.

In summary, as a result of alleged defects in components manufactured by Hurd and used by Bentley in the construction of houses, the parties released each other from past, present, and future claims as to specific defects. Nonetheless, in actions now brought by homeowners, Bentley and HMC have filed cross-claims against each other, Bentley has unsuccessfully joined Hurd in one case and in another, Bentley has filed a writ of summons to join Hurd. There are eleven cases where homeowners have filed a writ of summons but not a complaint and one where a homeowner has brought suit, but is not mentioned in the release. Additionally, there are vague, unexplained references to other provocations by Bentley.

## ANALYSIS

I am guided in this matter by *Quackenbush et al. v . Allstate Insurance Co.,* 517 U.S. 706 (1996). In *Quackenbush,* the Court for the first time ruled that the principles underlying abstention cases would not support a district court's remand or dismissal of a common-law action for damages. However, the Court also held that on its own motion and utilizing equitable principles, a district court may enter a stay of proceedings, that is, may withhold action until parallel state proceedings have been concluded. A stay of proceedings is not an abrogation of judicial duty but may be a wise and productive discharge of it.

---

[9] Hurd Millwork takes care to distance itself from Hurd Windows & Doors which is referred to in paragraph 62 of the amended complaint as being "errantly named" while in HMC's request for relief ¶ d., it is referred to as an "alleged 'Successor.'" It is also named in Exhibit H, a copy of the state trial judge's order which grants summary judgment to Hurd Millwork in Bentley's joinder of Hurd in the *Dockray* proceeding.

In determining matters of sound judicial administration, one of the factors a court may consider is the avoidance of piecemeal litigation. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 819 (1976).

It is obvious that such a stay is in order here so far as plaintiff's claim for money damages is concerned. HMC refers to a total of eighteen[10] state actions:

- Four where Bentley has cross-claimed against it and it has cross claimed against Bentley;

- One where Bentley has filed a writ of summons to join Hurd;

- Fifteen where only a summons has been filed, not against Hurd but only against Bentley, and where there is no complaint;

- One where only unspecified "defects in construction" are claimed but there is no further reference or identification; and

- One where after being joined by Bentley, Hurd was granted summary judgment.

Other than the last matter, the amended-complaint is silent as to when in any of these actions the necessary pleadings will be filed, what may be expected so far as discovery is concerned, whether dispositive motions are likely, when trial will be held, the likelihood of appeal, the prospects for settlement and thus when HMC's claim for damages might be ready for adjudication.

Accordingly, I will place this matter in civil suspense but in order to know when it should be returned to active status, I will require HMC and Bentley to file with me a joint report every six months as to the progress of each of the state court actions or any that may be brought in the future where Bentley and Hurd are involved. In addition, I suggest that the attached exhibit – or

---

[10] I am not including – indeed I cannot quantify – the other assertions in the complaint referred to as "numerous," *Comp.* ¶ *43,* "representations," *Id.* ¶ *88,* and "several," *Id.* ¶ *93.*

one bearing the same information – be utilized by HMC to support as to each case its ultimate claim for damages.

Finally, I will reaffirm my decision to deny declaratory relief.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HMC, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GARVIN MITCHELL CORP., et al. | : | NO. 07-CV-3165 |

**O R D E R**

AND NOW, this    26th    day of March, 2008, the Order of February 12, 2008, dismissing plaintiff's complaint is hereby VACATED and set aside and in its place, IT IS HEREBY ORDERED:

1. The findings in the Order of February 12, 2008, are reaffirmed and for the reasons set forth in the Order of February 12, 2008, Count One of the Complaint which seeks declaratory relief is DISMISSED.

2. The cause of action seeking damages for breach of contract stated in Count Two of the Complaint is STAYED AND PLACED IN CIVIL SUSPENSE until further order of court.

3. Beginning on October 1, 2008, and continuing every six months thereafter, the parties jointly shall file a written report of the status of each state court action referred to in the complaint and a similar report of the status of any state court action that may hereafter be filed in which HMC, Hurd Millwork Co., Inc., or Hurd Windows and Doors, Inc., is joined or against which a cross-claim is asserted by a defendant named in this case in a homeowners' suit alleging damages.

4. If it is agreed that a pending state case is not in breach of the limited terms of the parties' October 1, 2002 settlement agreement, the parties jointly shall so advise the court.

BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR. J.